UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Chapter 13 |
| | : | |
| John Michael Plevyak, | : | Case No. 5:23-02307–MJC |
| | : | |
| Debtor. | : | |

# O P I N I O N

In hopefully the last chapter of the long battle between an employer and a former employee that has spanned over a decade in State Court and this Court, the matter now before the Court is confirmation of John Michael Plevyak's ("Debtor") Third Amended Chapter 13 Plan and the Objection to Confirmation of the Plan filed by Solar Innovations, Inc. ("Solar"). For the reasons stated below, the Objection is sustained, and confirmation of the Plan is denied.

## I. PROCEDURAL AND FACTUAL HISTORY

The Debtor's extensive prior history of bankruptcy filings and litigation with Solar, his former employer, is set forth in detail in this Court's Opinion dated March 8, 2023 ("2023 Opinion") entered in the Debtor's prior 2016 bankruptcy case, which is incorporated herein. *See In re Plevyak*, 2023 WL 2413624 (Bankr. M.D. Pa. 2023).[1] In the 2023 Opinion, the Court denied the Debtor a discharge under 11 U.S.C. §727(a)(2)(B), 727(a)(3), 727(a)(4) and 727(a)(5), but denied Solar's claim that its debt was non-dischargeable under 11 U.S.C. §523(a)(6).[2] The

---

[1] The Debtor filed a Motion for Reconsideration which was denied by this Court's Order dated September 7, 2023. *In re Plevyak*, 2023 WL 5813929 (Bankr. M.D. Pa. 2023). The Debtor did not appeal the denial of discharge. The 2016 case was closed on September 22, 2023.

[2] Unless otherwise noted, all future statutory references are to the Bankruptcy Code, 11 U.S.C. §101, *et seq.*, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37 ("Bankruptcy Code").

findings of the Court in its 2023 Opinion are specifically germane to the matter *sub judice* as those facts are a part of the pattern or scheme employed by the Debtor against Solar since 2012.

In September 2023, Solar garnished the Debtor's bank accounts at First Columbia and M&T Bank. Doc. 3, Line 10. Because of this garnishment, Debtor filed the above-captioned Chapter 13 bankruptcy case, his 4th bankruptcy case, on October 6, 2023.[3] Shortly thereafter, the Debtor moved to extend the automatic stay pursuant to 11 U.S.C. §362(c)(3)(B). Doc. 15. Solar objected and the Court denied the Motion as §362(c)(3)(B) did not apply since the prior case was not "dismissed" as required under §362(c)(3)(B). Doc. 33.

Solar is the <u>only</u> creditor that filed a Proof of Claim in this case. Solar's Claim is in the amount of $1,182,361.31 and is based upon a judgment entered against the Debtor on March 8, 2015 in State Court litigation between the parties. See Claim # 1-1.

On October 17, 2023, the Debtor filed his Chapter 13 Plan. Doc. 14. Solar and the Trustee objected to the Plan. Doc. 40, 41. The Debtor filed a First Amended Plan on February 15, 2024. Doc. 44. After a second round of objections by Solar and the Chapter 13 Trustee, Debtor filed a Second Amended Plan on April 18, 2024. Doc. 48. On May 3, 2024, Solar filed an Objection and an Amended Objection to the Plan. Doc. 50, 51. The Trustee did not object.

On June 20, 2024, the Court held an evidentiary hearing on the Plan and Solar's Objection.[4] The Debtor testified at the hearing and exhibits were admitted into evidence. After the hearing, the Court held a status conference and requested Solar to supplement the record regarding the Debtor's financial transactions identified in certain financial records previously admitted into the

---

[3] Debtor's three prior cases are: No. 13-03907-JJT (Chapter 7), No. 13-05500-JJT (Chapter 7), No. 16-00158-MJC (Chapter 13 converted to Chapter 7). Debtor has been represented by the same law firm throughout all four (4) bankruptcy cases. The current case was filed two (2) weeks after the 2016 case was closed. Essentially, Debtor has been under the protection of the Bankruptcy Code since 2013.

[4] The Transcript, Doc 68, shall be hereinafter referred to as "Tr."

2

Case 5:23-bk-02307-MJC    Doc 69    Filed 09/25/25    Entered 09/25/25 16:04:34    Desc
Main Document    Page 2 of 20

record. Solar provided its Supplement on July 15, 2024 and the Debtor responded on July 22, 2024. Doc. 59, 60.

By Order and Memorandum dated September 6, 2024 the Court denied Confirmation of the Second Amended Plan, which provided for payments totaling $78,700 over a five (5) year period. Doc. 61, 62. The Court found that the Plan was not confirmable under the Bankruptcy Code because Debtor acknowledged that he is a "below median income debtor" and, as such, is limited to a commitment period of three (3) years pursuant to §1325(b)(4)(A)(i).[5]

On September 20, 2024, the Debtor filed his Third Amended Chapter 13 Plan ("Plan"). Doc. 63. This Plan provides for the same total payment of $78,700, but now over a three (3) year period. A lump sum payment of $43,000 was to be paid upon confirmation and a $17,425 lump sum payment at the end of the Plan term in 2026.

Solar filed an Objection to the Plan on October 10, 2024 ("Objection"). Doc. 64. The Trustee did not object, indicating that this is a two (2) party dispute and the Trustee is not taking a position. Counsel for the parties presented argument and it was agreed that the testimony and documents admitted at the June 20, 2024 hearing would be admissible for this Plan and Objection. This matter is now ripe for disposition.

II.     JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334 and the Standing Order of Reference of the U.S. District Court for the Middle District of Pennsylvania dated March 11, 2016. These matters are core proceedings pursuant to 28 U.S.C. §157(b)(2)(A), (G), and (L). Venue is proper pursuant to 28 U.S.C. §1409(a). This Opinion constitutes findings

---

[5] In its Memorandum, the Court noted that this Court had previously made a similar finding in *In re Kipps*, 2022 WL 4656005 (Bankr. M.D. Pa. 2022), *aff'd* 2024 WL 2874366 (3d Cir. 2024). Counsel for the Debtor here, is the same counsel as debtor's counsel in *Kipps*.

3

of fact and conclusions of law made under Fed. R. Bankr. P. 7052, which is made applicable to this proceeding under Fed. R. Bankr. P. 9014.

## III. LEGAL STANDARDS

**Confirmation of a Chapter 13 Plan**

Section 1325(a) governs confirmation of a Chapter 13 Plan, setting out specific requirements in order for a plan to be confirmed.

> To achieve confirmation, the court must find that the chapter 13 plan: was proposed in good faith; complies with the Code; is feasible; and provides certain baseline treatment for secured and unsecured creditors. Additionally, the Debtor must: have commenced the case in good faith, have paid any outstanding filing fees, have filed all tax returns required by section 1308; and be current on any postpetition domestic support obligations.

*In re Roebuck*, 618 B.R. 730, 732 (Bankr. W.D. Pa. 2020) (footnotes omitted).

A party objecting to confirmation of the plan bears the initial burden to come forward with evidence in support of the objection. *In re Lafferty*, 2019 WL 10431875, at *3 (Bankr. M.D. Pa. 2019); *In re Plevyak*, 599 B.R. 786, 788 (Bankr. M.D. Pa. 2019).[6] If that burden is met, then the burden shifts to the debtor. As the proponent of the plan, the debtor holds the ultimate burden of proof based upon a preponderance of the evidence to establish that the plan meets all of the §1325(a) requirements. *Id.*

## IV. DISCUSSION

Solar's objections to the Plan are based upon §§1322(a)(1), 1325(a)(3), (4), and (7). In support of these objections, Solar alleges that:

---

[6] In this 2019 Opinion, my predecessor Judge Opel found that the Debtor's Fifth Amended Plan, in his 2016 case, did not meet the "best interests of creditors test" under §1325(a)(4) and sustained Solar's and the Trustee's objections to confirmation.

4

1. §1322(a)(1) – The Debtor has not submitted all his disposable income to the Trustee as required.

2. §1325(a)(4) – The value of the property to be distributed under the Debtor's Plan to his creditors is less than the amount that would be paid if the estate were liquidated under a Chapter 7 case.

3. §1325(a)(3) and (7) - Because the Debtor failed to account for his prior financial misrepresentations and omissions and filed this case "just months after he was denied a discharge", the Plan and the Petition in this case were filed in bad faith.

A. **<u>Debtor's Plan</u>**

As set forth above, the Debtor's Second Amended Plan, Doc. 48, improperly attempted to spread his plan payments over a five (5) year period. The Plan before the Court now provides for the same total payments to the Trustee totaling $78,700 but over a three (3) year period. The only unique items in the Plan are that Debtor proposes a lump sum payment of $43,000 upon confirmation and another lump sum payment of $17,425 on November 1, 2026. Otherwise, the Plan contemplates smaller monthly payments throughout the Plan term.[7] The $43,000 payment will be made from funds Debtor liquidated from his 401(k)-retirement account pre-petition that were garnished by Solar in September 2023. *See* Doc. 63, p. 13. The Plan also indicates that the Debtor will liquidate additional funds from his retirement accounts to fund the final $17,425 payment in 2026. *Id*. at pp. 3, 14. There is nothing in the record that would indicate why the Debtor could not make this payment sooner.

The Plan also attaches a Liquidation Analysis that indicates a liquidation value of the bankruptcy estate of $78,327.11. This Analysis, prepared by Debtor, identifies the assets

---

[7] The monthly payments "step-up" from $450 per month in the first year to $625 per month in the last year. There is nothing in the record as to why the Debtor is not making higher payments throughout the Plan's term.

5

of the estate and corresponding values, less certain costs and the Debtor's allowed exemptions. *Id.* at p. 14.

As the monthly payments under the Plan are to be funded by Debtor's income, the Court must also review the Schedules filed by Debtor. On Schedule I: Your Income, Debtor lists $2,429 of social security benefits and $11.08 of "Music Royalties" as his monthly income. Doc. 2. Schedule J: Your Expense, Debtor lists $1,411.00 in total monthly expenses. Accordingly, Debtor's net monthly income is $1,029.08, which should presumably be available for payment to creditors.[8]

### B. Solar's Objections

#### 1. §1322(a)(1) Objection

Section 1325 of the Bankruptcy Code contains the legal requirements for the confirmation of a Chapter 13 plan. As stated above, a party objecting to confirmation of the plan bears the initial burden to come forward with evidence in support of the objection. *In re Lafferty*, 2019 WL 10431875, at *3 (Bankr. M.D. Pa. 2019); *In re Plevyak*, 599 B.R. 786, 788 (Bankr. M.D. Pa. 2019). Solar has objected to the Debtor's Plan arguing that the Debtor has not submitted all of his income to fund the Plan under §1322(a)(1). Under §1322(a)(1), a Chapter 13 debtor's plan "shall provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan." Accordingly, "[a] chapter 13 plan must contain a provision calling for submission to the supervision and control of the chapter 13 trustee of whatever future income or earnings of the debtor are necessary for the execution of the plan. It does not require that a chapter 13 plan propose to submit any portion of the future income of the debtor to the control of the trustee, except to the

---

[8] There is nothing in the record as to why the monthly Plan payments start at $450 per month instead of the $1,029.08 monthly net income set forth on the Debtor's Schedules.

extent that the plan is to be funded from future income." 8 Collier on Bankruptcy ¶ 1322.02[1] (Alan N. Resnick and Henry J. Sommer eds., 16th ed.).

Here, Solar has the initial burden to provide evidence that the Debtor has not submitted all of his income to the funding under the Plan. The only income identified at the hearing is $2,429 per month of social security income and approximately $200 per year in music royalties. Although Solar argues that the Debtor did not meet his obligations under §1322(a)(1), the Court finds that Solar has not identified any evidence of specific income that has not been "submitted" to fund the Plan.[9] Accordingly, Solar's Objection under §1322(a)(1) is overruled.

### 2. §1325(a)(4) Objection

Solar also objects to the Plan under §1325(a)(4) which requires that a debtor must provide in his plan:

> the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;

11 U.S.C. §1325(a)(4).

This provision is often referred to as the "best interests of creditors" or "liquidation alternative test." *In re McKinney*, 507 B.R. 534, 540 (Bankr. W.D. Pa. 2014). This test requires that unsecured creditors will be paid, at a minimum, the amount they would be paid if the case were a hypothetical Chapter 7 liquidation case. *Hackerman v. Demeza*, 576 B.R. 472, 481-82 (M.D. Pa. 2017); *In re Cumba*, 505 B.R. 110, 114-15 (Bankr. D.P.R. 2014).

Interestingly, in Debtor's 2016 bankruptcy case, retired Judge Robert N. Opel found that the Debtor's Fifth Amended Plan did not satisfy the best interests of creditors test under

---

[9] However, as discussed below, the Court will review in greater detail the "totality of the circumstances" to determine if Debtor's filing of the Plan and the Petition were in good faith.

§1325(a)(4). *In re Plevyak*, 599 B.R. at 790. Judge Opel found that Debtor failed to include $8,000 of non-exempt musical equipment in his liquidation analysis and denied confirmation but did allow Debtor "one final opportunity to propose a confirmable plan." *Id*. Debtor was unable to confirm his 6th amended plan and the case was converted to one under Chapter 7. Over seven (7) years later, this 2016 case was closed with the denial of Debtor's discharge for the reasons set forth in the Court's 2023 Opinion.

Solar now claims that Debtor has not provided for Plan funding that would satisfy the "liquidation test." Solar asserts, *inter alia*, that the Plan fails to account for funds that were escrowed with Debtor's counsel in 2018 as well as funds that were withdrawn and/or that remain unaccounted for prior to the filing of the Petition. S*ee* Debtor's Objection, Doc. 64 at ¶¶ 5-14. At the hearing on this matter, Solar was able to identify significant funds in "cash" being deposited into Debtor's accounts and withdrawals of "cash" from his accounts. *See* Tr. at 25-34.[10] Debtor testified that the source of a large deposit of cash was from a friend living out of state but had no documentation to prove any type of loan transaction. This is similar testimony from the Debtor that was found not credible in his 2016 case. For the same reasons as set forth in the 2023 Opinion, the Court again finds Mr. Plevyak to be not credible as to his assets. The Court also finds that the Debtor has not met his burden to show by a preponderance of the evidence this case was filed in good faith to meet the "liquidation test." Accordingly, Solar's Objection under §1322(a)(4) is sustained.

---

[10] These "cash" transactions included: $46,000 deposit (12/7/21); $50,000 withdrawal (1/7/22); $6,000 deposit (12/7/21); $4,000 withdrawal (8/25/23); and a check for $2,800 to reimburse a friend for travel expenses.

### 3. §1325(a)(3) and (7) Objections

Solar's primary Objections to the Plan relate to Debtor's good faith or, more accurately, his bad faith. Particularly relevant here are Solar's Objections under (i) §1325(a)(3) which requires that "the plan has been proposed in good faith" and (ii) §1325(a)(7) which requires that "the action of the debtor in filing the petition was in good faith."[11] Although both sections focus on the Debtor's "good faith," the primary difference is temporal. Section §1325(a)(3) obligates the Court to analyze the debtor's conduct after the filing of the case, and §1325(a)(7) concentrates on a review of the debtor's conduct prior to and as of the commencement of the case. *In re Ames*, 2022 WL 2195469, at *6 (Bankr. E.D. Pa. 2022).

The Bankruptcy Code does not define good faith, and the Third Circuit has not articulated standards specifically for determining good faith for purposes of plan confirmation. The Court in *In re Tamecki*, 229 F.3d 205, 207 (3rd Cir. 2000) found that:

> Courts can determine good faith only on an ad hoc basis and must decide whether the petitioner has abused the provisions, purpose, or spirit of bankruptcy law. *See Marks*, 174 B.R. at 40. The parties agree that the decision to dismiss a petition for lack of good faith rests within the sound discretion of the bankruptcy court. *See Zick*, 931 F.2d at 1126, *In re Atlas Supply Corp.*, 857 F.2d 1061, 1063 (5th Cir.1988).

Courts employ varying tests with respect to determining good faith under §1325(a) but generally agree that good faith should be determined based upon a totality of the circumstances. *See e.g.*, *In re Young*, 2013 WL 6223831 (Bankr. M.D. Pa. 2013); *In re Rodriguez*, 487 B.R. 275, 283 (Bankr. D.N.M. 2013); *In re Jongsma*, 402 B.R. 858, 876 (Bankr. N.D. Ind. 2009). Courts in the Third Circuit have consistently applied the standard considered under §1307(c) for dismissal or conversion of a case. *See e.g., In re Demeza*, 567 B.R. 473, 477 (Bankr. M.D. Pa.), *aff'd sub nom.*

---

[11] Section 1325(a)(3) has been a part of the Code since its enactment in 1978. Section 1325(a)(7) was added to the Code in 2005 by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109–8, 119 Stat. 23 (2005) ("BAPCPA").

*Hackerman v. Demeza*, 576 B.R. 472 (M.D. Pa. 2017); *In re Young*, 2013 WL 6223831, at *7 (Bankr. M.D. Pa. 2013); *In re Dahlgren*, 418 B.R. 852, 857 (Bankr. D. N.J. 2009). The Third Circuit in *In re Lilley* stated that the analysis should take into consideration:

> the nature of the debt ...; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors.

*In re Lilley*, 91 F.3d 491, 496 (3d Cir. 1996) (*quoting In re Love*, 957 F.2d 1350, 1357 (7th Cir. 1992)). The Court must now apply these standards to the facts of this Chapter 13 case.

### a. §1325(a)(3) - Has the plan been proposed in good faith?

To confirm a Chapter 13 plan, §1325(a)(3) requires that "the plan has been proposed in good faith." In making this determination, the Court is primarily evaluating the debtor's conduct after the commencement of the case, and particularly the case administration leading to the filing of a proposed Chapter 13 plan. *Ames*, 2022 WL 2195469, at *5-6. In *Ames,* the Court found that the inquiry under §1325(a)(3) "largely turns on whether the debtor is attempting to pay the creditors to the reasonable limit of his or her ability and is treating his or her creditors fairly." *Id*. The Court in *Ames* relied upon a three (3) part test set forth in *In re Soppick*, 516 B.R. 733 (Bankr. E.D. Pa. 2014). The *Soppick* test considers whether the debtor has:

1. stated his or her debts and expenses accurately;

2. made any fraudulent misrepresentation to mislead the bankruptcy court; or

3. unfairly manipulated the Bankruptcy Code.

*Soppick* at 750-51 (*quoting In re Norwood,* 178 B.R. 683, 688 (Bankr.E.D.Pa.1995)).

The Seventh Circuit Court of Appeals, in discussing the good faith requirement found that:

10

Case 5:23-bk-02307-MJC   Doc 69   Filed 09/25/25   Entered 09/25/25 16:04:34   Desc
Main Document    Page 10 of 20

one of the primary purposes of the good faith evaluation in both contexts is to "force [ ] the bankruptcy court to examine 'whether or not under the circumstances of the case there has been an abuse of the provisions, purpose, or spirit of [the Chapter] ....' " *See id.* [*Matter of Smith,* 848 F.2d] at 818 (quoting *Rimgale,* 669 F.2d at 431). At base, this inquiry often comes down to a question of whether the filing is fundamentally fair. *See Schaitz,* 913 F.2d at 453 ("the most fundamental and encompassing [factor when evaluating good faith] is whether the debtor has dealt fairly with his creditors.") In other words, the focus of the good faith inquiry under both Section 1307 and Section 1325 is often whether the filing is fundamentally fair to creditors and, more generally, is the filing fundamentally fair in a manner that complies with the spirit of the Bankruptcy Code's provisions.

*Matter of Love,* 957 F.2d 1350, 1357 (7th Cir.1992) (*quoted in Soppick* at 751).

Unfortunately for Debtor, this Court has thoroughly analyzed the Debtor's conduct as set forth in its 2023 Opinion.[12] This conduct spans a period of approximately thirteen (13) years and relates solely to Debtor's interactions with Solar – which is the sole creditor in this case. Although the Court will discuss Debtor's pre-petition misconduct more fully in connection with the analysis under §1325(a)(7) below, Debtor cannot erase this conduct by merely filing a new bankruptcy two (2) weeks after the prior case closed.

In this case, and similar to Debtor's conduct in his prior cases, Debtor has thus far filed four (4) plans - an original and three (3) amended plans. The original plan contemplated monthly payments of $450 over five (5) years, plus a lump sum payment of $43,000 upon confirmation for a total of $70,000. Doc. 14. The First Amended Plan, Doc. 44, filed after Objections by Solar and the Trustee were sustained, increased the total payments to $78,400 based upon an increased liquidation analysis by Debtor. The Second Amended Plan, Doc. 48, filed after Objections by Solar

---

[12] The Court may take judicial notice of its own docket. *In re Harmony Holdings, LLC*, 393 B.R. 409, 413 (Bankr. D.S.C. 2008); *In re Paolino*, 1991 WL 284107, at * 12 n. 19 (Bankr. E.D. Pa. 1991). The Court takes judicial notice of the docket entries in the 2013 and 2016 Cases, as well as the contents of the schedules, statements and case filings which are not reasonably subject to dispute. The Court specifically incorporates herein by reference its findings of fact and conclusions of law from the 2023 Opinion.

11

were sustained, increased the total payments to $78,700 based upon another increase in the liquidation analysis. Solar objected to this Plan as well.

After an evidentiary hearing on June 20, 2024, the Court denied confirmation of the Second Amended Plan because the Debtor attempted to improperly pay Solar over a five (5) year term. Doc. 62. In its Memorandum dated September 6, 2024, Doc. 61, the Court found that pursuant to §1322(d)(2) (hanging paragraph), a "below median income debtor" cannot obtain a confirmed plan that proposes payments for longer than thirty-six (36) months unless the Court finds "cause" to approve a longer period. *See In re Kipps*, 2024 WL 2874366, at *3 (3d Cir. 2024). The Court notes that counsel for the Debtor here is the same counsel as in *Kipps* where this same issue was adjudicated. Debtor did not seek approval for a longer repayment term and it is apparent that the proposed sixty (60) month plan was merely an improper means to delay payment to Solar.

Next, Debtor filed the Third Amended Chapter 13 Plan ("Plan"), which provides for the same total payment of $78,700, but now over a three (3) year period. Debtor proposed lump sum payments of $43,000 to be paid upon confirmation and $17,425 at the end of the Plan term in 2026. The $43,000 payment was to be made from funds that were garnished pre-petition by Solar in September 2023. *See* Doc. 3, at 3. Solar filed its Objection, Doc. 64, and the Court held a hearing on November 14, 2024.[13]

After delaying and frustrating Solar for over a decade, Debtor's proposal to pay $17,425 over three (3) years after the filing is not in good faith. More problematic is Debtor's failed attempt to pay Solar over a five (5) year term when the Bankruptcy Code clearly limits the term to three (3) years. This improper attempt to delay payments to Solar and manipulate the Bankruptcy Code, without a legal basis, is in bad faith.

---

[13] At this Hearing, counsel for the parties agreed that the testimony and documents entered at the June 20, 2024 Confirmation Hearing would be incorporated here.

In reviewing the Plan under a "totality of the circumstances" analysis, the Debtor's prior misrepresentations and failures to disclose or explain his financial condition, creates difficulty in assessing his current income, expenses and assets and determining whether his schedules are accurate or whether he made any fraudulent misrepresentations to the Court.[14] Due to this continued non-disclosure, it is impossible for the Court to find that the Debtor has accurately disclosed his current assets, income and expenses on his Schedules and in the proposed Plan. Solar introduced financial records showing the Debtor regularly making large cash deposits and withdrawals despite being unemployed for over a decade and subsisting on social security of about $2,400 per month. *See* Doc. 59. The Court found in 2023 that the Debtor's testimony was not credible. *In re Plevyak*, 2023 WL 2413624, at *10, 13, n. 18 .[15] "[T]his Court still wonders what happened to the $250,000 and how much, if any, is left." *Id.* at *13. The Debtor's testimony in this case did not change this Court's opinion.

Accordingly, I find that the Plan was not proposed in good faith.

### b. §1325(a)(7) - Has the Petition been filed in good faith?

Section 1325(a)(7) requires that "the action of the debtor in filing the petition was in good faith." Since §1325(a)(7) was added to the Code in 2005, Courts have concluded that it "appears to be nothing more than a codification of the long-standing judge-made rule and a corollary of §

---

[14] In the prior cases, the Debtor was unable to credibly explain cash withdrawals of over $250,000 and at least $25,000 in cash that was allegedly hidden in the walls of his house by his mother. *See* 2023 Opinion at *10.

[15] This was not the first time the Debtor was found to be acting in bad faith and not credible. In 2014, Judge Thomas granted Solar's motion to dismiss and dismissed the Debtor's prior Chapter 7 case finding it to be in bad faith and an abuse under §707(a) and (b)(1). Case No. 13-bk-05500-JJT, Doc. 60. In 2020, Judge Opel, after considering the Debtor's 6th Amended Chapter 13 Plan, "found Mr. Plevyak's testimony to be curious and to a degree not credible" and that he was not "forthcoming with his creditor Solar nor with the Court." Case No. 16-00158, 9/2/20 Hearing Notes at 10:14-10:17. In finding that Debtor did not meet his burden of "good faith", Judge Opel denied confirmation of the Plan and converted the case to one under Chapter 7.

13

Case 5:23-bk-02307-MJC   Doc 69   Filed 09/25/25   Entered 09/25/25 16:04:34   Desc
Main Document    Page 13 of 20

1307(c)...." *In re Shafer,* 393 B.R. 655, 659 (Bankr. W.D. Wis. 2008); *see also In re Aprea,* 368 B.R. 558, 566 (Bankr. E.D. Tex. 2007). That position has been accepted by Bankruptcy Courts within this circuit post–2005, as they still apply the *Lilley* factors under section 1307(c) when considering the issue of bad faith. *See, e.g., In re Young,* 2013 WL 6223831, *7 (Bankr. M.D. Pa. 2013); *In re Scotto–DiClemente,* 459 B.R. 558, 562 (Bankr. D.N.J. 2011); *In re Dahlgren,* 418 B.R. 852, 857-58 (Bankr. D.N.J. 2009).; *see also In re Mondelli,* 558 Fed. Appx. 260, 262–63 (3d Cir.2014) (affirming the bankruptcy court order dismissing the case under section 1307(c), and applying the factors set out in *In re Lilley* ).

The Court must determine if the debtor has abused the provisions, purpose, or spirit of bankruptcy law. *In re Tamecki,* 229 F.3d 205, 207 (3d Cir. 2000). Once again, the Court turns to a "totality of the circumstances" analysis and consideration of the *Lilley* factors.

### i. The Nature of the Debt and How the Debt Arose

Here, the Court must determine whether the debt to Solar resulted from bad acts or intentions of the Debtor. *In re Manfredi*, 434 B.R. 356, 359 (Bankr. M.D. Pa. 2010)(*citing In re Myers,* 491 F.3d 120, 126 (3d Cir.2007) (debt arose from an adverse judgment of a fraudulent conveyance); *In re Jensen,* 369 B.R. 210, 235 (Bankr. E.D. Pa. 2007). The nature of Solar's debt relates to Debtor's separation from his employment with Solar in 2011. The facts relating to Debtor's conduct are set forth in exhaustive detail in the 2023 Opinion. If Debtor had merely resigned from his employment - there would be no issue. However, prior to leaving Solar, Debtor embarked on a program of intentionally deleting his work product and other information from Plaintiff's computer system, while conspiring with a competitor for a new job, and committing other acts in violation of his employment agreement and a confidentiality agreement. 2023 Opinion at *1. Based on this conduct, Plaintiff sued Debtor and obtained a judgment against him

in the amount of $1,182,361.31 in State Court in 2016. The damages included $652,941.18 in "sabotage damages", $3,562.50 in "restoration damages", and $397,095.06 in litigation costs. 2023 Opinion at *4. Accordingly, Debtor's well-documented intentional bad acts weigh against him.

### ii. Timing in the Filing of the Petition

Next, the Court must determine if the timing of the Debtor's Petition was in bad faith. Generally, bad faith exists "where the purpose of the bankruptcy filing is to defeat state court litigation without a reorganization purpose." *In re Myers,* 491 F.3d at 125 (*quoting In re Dami,* 172 B.R. 6, 10 (Bankr. E.D. Pa. 1994)). This is the Debtor's fourth bankruptcy case. Each of the prior cases were also filed to thwart Solar's efforts against him. *See* Nos. 13-bk-03907-JJT; 13-bk-05500-JJT; and 16-bk-00158-MJC. Further, each of these cases have dockets that are littered with motions to dismiss, multiple amended plans, and adversary actions objecting to discharge. In each of these cases Debtor was unable to obtain a discharge or confirm a plan and the only material creditor was Solar.

Here, the Petition was filed only two (2) weeks after Debtor's 2016 case closed. It is not disputed that Debtor filed his Petition only after Solar, in attempting to collect upon its 2016 State Court judgment in the amount of $1,182,361.31, garnished his bank accounts holding over $46,000 in September 2023.[16] The Court finds that the timing of this bankruptcy filing was another tactic to delay Solar from pursuing its State Court judgment with no good faith reorganization effort. Accordingly, the timing of this Petition supports a finding of bad faith.

---

[16] The record reflects that in the months prior to the Petition date, Debtor transferred $12,000 and $40,000 to his bank account and withdrew another $4,000 from a different account. *See* Doc. 59.

### iii. The Debtor's Motive in Filing the Petition

Debtor's motive dovetails with the timing of the filing of the Petition. It would appear that Debtor would never have filed his Petition but for Solar's State Court garnishment. There was no testimony from Debtor that the garnished funds were to be paid to Solar and the Debtor provided no evidence or testimony of a rationale for filing other than to frustrate Solar's collection efforts.[17] Accordingly, the Debtor's motive in filing this Petition supports a finding of bad faith.

### iv. How the Debtor's Actions Affected Creditors

Here, the Court must determine whether the filing is fundamentally fair to creditors and in a manner that complies with the spirit of the Code. *In re Hurlbutt*, 2021 WL 6101682, *6 (Bankr. M.D. Pa. 2021). In this case, Solar is the sole creditor. Upon review of this case docket as well as the three (3) prior bankruptcy cases filed by Debtor in this Court, the Court finds that Debtor's actions do not comply with the spirit of the Code. As set forth in the Court's 2023 Opinion, the history of this case spans over a decade. Since the Debtor left Solar's employ, he has filed numerous bankruptcy cases, which were either dismissed or closed with a denial of discharge, and has continually frustrated Solar's efforts to collect on its State Court judgment. Solar has been forced to incur significant legal fees and costs in pursuing Debtor. The instant case was filed only after Solar's State Court garnishment and not because of any meaningful intention to reorganize by the Debtor. Accordingly, Debtor's actions have injured Solar, his only creditor, and supports a finding of bad faith.

### v. The Debtor's Treatment of Creditors Both Before and After the Petition was Filed

In considering this factor, my colleague Chief Judge Van Eck found:

---

[17] There is nothing in the record as to why the Debtor had almost $40,000 in his bank account at the time of the garnishment.

16

Case 5:23-bk-02307-MJC    Doc 69    Filed 09/25/25    Entered 09/25/25 16:04:34    Desc
Main Document    Page 16 of 20

The Court next examines whether the Debtor took actions to frustrate creditors rather than to reorganize and treat creditors fairly. *In re Manfredi,* 434 B.R. at 361. Actions meeting this factor may include the dissipation, concealment, or other transfer of assets for the purpose of placing them beyond the reach of creditors, see *In re Myers,* 491 F.3d at 126; *In re Kerschner,* 246 B.R. at 498--499, or filing multiple bankruptcy petitions for the sole purpose of frustrating a creditor's efforts to exercise its state law remedy. *In re LeGree,* 285 B.R. 615, 619 (Bankr. E.D. Pa. 2002).

*In re Hurlbutt*, at *6.

Here, Debtor has done all of the above. As set forth in the 2023 Opinion and above in this Opinion, Debtor has clearly frustrated Solar with no good faith intention to reorganize or pay Solar. He has concealed assets and filed multiple bankruptcy cases "for the sole purpose of frustrating a creditor's efforts to exercise its state law remedy." In this case, Debtor has proposed a plan that improperly delayed payment to Solar for two (2) years and the Court, again, finds Debtor not credible.

Accordingly, Debtor's treatment of Solar, his only creditor, supports a finding of bad faith.

### vi. Whether the Debtor was forthcoming with the Bankruptcy Court and Creditors

The last *Lilley* factor requires a determination of whether the Debtor has been forthcoming with the Court and creditors. The overriding purpose of the Bankruptcy Code is to permit honest debtors to reorder their financial affairs with their creditors and obtain a "fresh start," free from the weight of oppressive, preexisting debt. *In re Cohn*, 54 F.3d 1108, 1113 (3d Cir. 1995). "But in the same breath that we have invoked this "fresh start" policy, we have been careful to explain that the Act limits the opportunity for a completely unencumbered new beginning to the 'honest but unfortunate debtor.'" *Grogan v. Garner,* 498 U.S. 279, 286-287 (1991) (*quoting Local Loan Co. v. Hunt,* 292 U.S. 234, 244 (1934)). Obtaining a discharge in bankruptcy is a privilege, not a right, and is thus reserved to honest debtors who deal fairly with the Court and their creditors. *In*

*re Spitko*, 357 B.R. 272, 298 (Bankr. E.D. Pa. 2006) (*quoting Matter of Juzwiak*, 89 F.3d 424, 427 (7th Cir. 1996)).

In the 2023 Opinion, the Court found that the Debtor was <u>not</u> an "honest but unfortunate debtor." 2023 Opinion at *15. In denying Debtor a discharge, the Court made specific findings that Debtor:

1. Engaged in a ten (10) year pattern of concealing substantial assets from Solar and the Court. *Id.* at * 8.

2. Failed to keep financial records and dissipated, hid or concealed from his creditors and the Court substantially all of his money and then, <u>after</u> his third bankruptcy filing, intentionally concealed his receipt of additional assets. *Id.* at * 10-11.

3. Knowingly and fraudulently made (i) a false oath or account and (ii) received money without disclosure. *Id.* at * 12.

4. Failed to explain the withdrawal of over $250,000 prior to his first bankruptcy case. *Id.* at * 13.

Debtor has failed to change these findings. Given Debtor's lack of credibility before this Court spanning over the last decade, it is impossible to find that Debtor fully and honestly disclosed all of the required information.[18] Debtor has not met his burden of proof based upon a preponderance of the evidence to establish that the plan meets all of the §1325(a) requirements. *In re Lafferty*, 2019 WL 10431875, at *2-3 (Bankr. M.D. Pa. 2019). Accordingly, this factor strongly disfavors the Debtor.

As the Debtor has not met any of the *Lilley* factors, I find that the Debtor's Petition was not filed in good faith under §1325(a)(7).

---

[18] As the trier of fact, this Court is in the best position to assess the credibility of any witness who testifies before it. *Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc.*, 57 F.3d 1215, 1223 (3d Cir. 1995) ("Furthermore, in reviewing the bankruptcy court's factual findings we are to give 'due regard' to the opportunity of that court to judge first-hand the credibility of witnesses.").

### c. As the Debtor's Petition was not filed in Good Faith, Dismissal with Prejudice is Appropriate.

Once a lack of good faith is found, the Court must determine the remedy. The determination of a lack of good faith under §1325(a)(7) is "irremediable" and cannot be cured by the filing of an amended plan. *In re Ames*, 2022 WL 2195469, at *9 (*citing In re Manno*, 2009 WL 236844 (Bankr. E.D. Pa. 2009)); *In re Warwick*, 668 B.R. 555, 580 (Bankr. E.D. Tenn. 2025). Accordingly, this Chapter 13 Bankruptcy Case shall be dismissed. *In re Brandland*, 570 B.R. 203, 219 (Bankr. E.D. Va. 2017); *In re Colston*, 539 B.R. 738, 750 (Bankr. W.D. Va. 2015). Under §1325(a)(7), a lack of good faith in filing a chapter 13 petition mandates a denial of confirmation which is irremediable and warrants dismissal under §1307(c).

Section 349(a) provides that a dismissal of a case does not bar the filing of a subsequent case unless the court "for cause" orders otherwise. Courts have found sufficient cause for dismissal with prejudice where good faith is lacking. *In re Stone Fox Cap. LLC*, 572 B.R. 582, 591 (Bankr. W.D. Pa. 2017) (*citing In re JER/Jameson Mezz Borrower II, LLC,* 461 B.R. 293, 304 (Bankr. D. Del. 2011)). Likewise, cause under §349(a) has been found where debtor made material omissions and errors in the schedules and statements. *In re Powell,* 2022 WL 10189109, at *5-6 (Bankr. M.D. Pa. 2022); *In re Jenkins,* 2014 WL 268688, at *4 (Bankr. W.D. Ky. 2014).

In what is essentially a two (2) party dispute between Debtor and Solar, Debtor, in what is now his fourth bankruptcy case, has employed every means available to delay and frustrate Solar's efforts to collect on the State Court Judgment.[19] Based upon the clear record of a lack of good

---

[19] Often, two-party disputes are better resolved in state court and not in a bankruptcy proceeding. *See In re Stone Fox Capital LLC*, 572 B.R. 582, 591 (Bankr. W.D. Pa. 2017); *In re SB Properties, Inc.,* 185 B.R. 206, 208–09 (Bankr. E.D. Pa. 1995), *appeal dismissed,* 185 B.R. 198 (E.D. Pa. 1995)

faith spread across all four (4) cases before this Court, the Court finds that a two-year bar from filing another case is justified.[20]

## V. CONCLUSION

I concluded the 2023 Opinion by stating:

> A bankruptcy judge should always strive to permit an honest but unfortunate debtor a fair opportunity to reorganize and to obtain a discharge of his or her personal obligations. After three (3) separate bankruptcy cases, at least three (3) separate adversary actions, seven (7) proposed Plans that all failed while the case was in Chapter 13, failure to account for over $250,000 in cash withdrawn from his accounts prior to the filing of his first case and material misrepresentations and omissions discovered in his bankruptcy papers, this Court finds that Debtor is not an honest but unfortunate debtor.

2023 Opinion at *15. Now, after the 2023 determination that the Solar debt was not dischargeable and yet another Bankruptcy filing by Debtor, this Court concludes, again, that Debtor is not an honest but unfortunate debtor. The Court finds that Debtor has not met his burden to show that he filed his case or proposed his Chapter 13 plan in good faith. Accordingly, confirmation is denied. Further, dismissal with prejudice is appropriate, and Debtor shall not be permitted to file a bankruptcy petition for a period of two (2) years.

An appropriate order shall be entered.

By the Court,

_____
Mark J. Conway, Bankruptcy Judge
Dated: September 25, 2025

---

[20] In affirming the denial of a debtor the opportunity to amend a plan after a finding of bad faith, the Seventh Circuit stated, "bankruptcy courts are given a great deal of discretion to say when enough is enough." *Matter of Woodbrook Associates,* 19 F.3d 312, 322 (7th Cir. 1994). This Court finds that enough is enough.